Aylna Marie **RAMIREZ**, et al.

v.

**RICHARDSON–MERRELL, INC.**, et al.

Civ. A. No. 85–1504.

United States District Court,
E.D. Pennsylvania.

Jan. 29, 1986.

---

Barry J. Nace, Paulson, Nace & Norwind, Washington, D.C., Soren P. West, Lancaster, Pa., for plaintiff.

Edward W. Madeira, Jr., Nina M. Gussack, Pepper Hamilton & Scheetz, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION

HUYETT, District Judge.

Plaintiffs filed this products liability action alleging that minor plaintiff, Alyna Marie Ramirez, was born on July 4, 1980 with certain deformities as the result of her mother's ingestion during her pregnancy of Bendectin, a prescription drug. Bendectin had been prescribed by Rosa Ramirez's physician for the treatment of nausea and vomiting in the early stages of her pregnancy with the minor plaintiff. In addition to the counts against Merrell Dow Pharmaceuticals, Inc. (referred to by plaintiffs as Richardson-Merrell, Inc.), plaintiffs have included two counts against Queen Pharmacy, the pharmacy which allegedly filled the Bendectin prescription. Defendant Queen Pharmacy has filed a motion for summary judgment which for the reasons outlined below I have granted by order dated December 18, 1985.

The first cause of action against Queen Pharmacy, set forth in count VIII, is one in negligence. Plaintiffs allege that Queen Pharmacy was negligent in failing to advise or warn plaintiff Rosa Ramirez of the potential hazards associated with the ingestion of Bendectin and specifically in failing to warn plaintiff that antihistamines and pharmaceuticals wherein active ingredients included antihistamines had been scientifically shown to be teratogens in animals and humans, thus causing birth defects in children. The second cause of action, count IX is one in strict liability and is also based on a failure to warn theory.

In its motion for summary judgment, defendant Queen Pharmacy contends that it had no duty to warn plaintiff Rosa Rameriz and that, therefore, it cannot be held liable as a matter of law under either negligence or a strict liability theory. In response, plaintiffs contend that the standard of care of reasonably prudent pharmacists in the United States requires the pharmacist to advise the client fully of potential adverse consequences associated with the medication, and if the pharmacist knows or has reason to know that an ingredient in a drug is contraindicted or carries a warning for use in pregnancy in its over-the-counter composition, the pharmacist's duty is absolute to advise the patient of the potential ill effects.

I note as a preliminary matter that the drug was purchased in Pennsylvania and presumably used by plaintiff Rosa Ramirez in Pennsylvania. It would appear therefore that the cause of action arose in Pennsylvania and Pennsylvania law shall govern the strict liability and negligence claims.

Federal Rule of Civil Procedure 56(c) states that summary judgement is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Small v. Seldows Stationary*, 617 F.2d 992 (3d Cir. 1980). The court does not decide any issues of fact but simply determines if there is an issue of fact to be tried. *Ettinger v. Johnson*, 556 F.2d 692 (3d Cir.1977). The facts must be viewed in the light most favorable to the opposing party, and any reasonable doubt as to the existence of a genuine issue of fact is to be resolved against the moving party. *Continental Insurance Co. v. Bodie*, 682 F.2d 436 (3d Cir.1982).

Because of the great benefit to society of new and effective drugs, courts have held that sellers of drugs are not to be held strictly liable for the unfortunate consequences of their use so long as the drugs are properly prepared and marketed and appropriate warnings are given. *Incollingo v. Ewing*, 444 Pa. 263, 282 A.2d 206 (1971), *citing*, Restatement (Second) of Torts, § 492A, comment K. Under Pennsylvania law, where the drug in issue is

available only by prescription, "the warning required is not to the general public or to the patient, but to the prescribing physician." *Incollingo*, 282 A.2d at 220. Therefore, the manufacturer of the drug satisfies any duty it has by providing proper warnings to the prescribing physicians. In an action against the manufacturer, the appropriate question is whether the warning that was given to the prescribing doctors, if any, was proper and adequate. *Id.* at 220.

Plaintiffs contend that because no warning was given by Queen Pharmacy to plaintiff Rosa Ramirez as to the potential hazards associated with the ingestion of Bendectin, plaintiffs are entitled to judgment as a matter of law as to the Pharmacy's liability. There are no Pennsylvania cases directly addressing the issue of the pharmacist's duty to warn the consumer when filling a prescription or the issue of whether a drug without a warning supplied by the pharmacist becomes unreasonably dangerous. It would be illogical and unreasonable, however, to impose a greater duty on the pharmacist or druggist who properly fills the prescription than is imposed on the manufacturer. Holding that the pharmacist has a duty to warn the patients directly of the potential hazards when the manufacturer does not have that duty would be to impose that greater duty. Similarly, although a prescription drug may be considered defective if the manufacturer fails to warn the prescribing physician adequately, thereby subjecting the manufacturer to strict liability, this warning need not accompany the product to the patient. *Baldino v. Castagna*, 505 Pa. 239, 478 A.2d 807, 810 (1984); *Incollingo v. Ewing*, 444 Pa. 263, 287–88, 282 A.2d 206, 219–20 (1970). It follows therefore that the product dispensed by the pharmacist is not defective because of the absence of a warning.

Retailers as well as manufacturers and suppliers have been held liable under the theory of strict liability. However, as the court in *Bichler v. Willing*, 58 A.D.2d 331, 397 N.Y.S.2d 57 (1977) noted, there is a convincing argument to be made that retail pharmacists should not be held strictly liable for injuries sustained as the result of the ingestion of certain drugs. To hold a druggist strictly liable would be to make the druggist an insurer of the safety of the manufactured drug and would impose on the retail druggist the obligation to test, at its own expense, new drugs. The costs to society which needs and values the pharmaceutical products sold by druggists, would be unduly high. Therefore, a druggist should not be an absolute insurer. 79 A.L. R.2d 301, 315.

Although the Pennsylvania courts have not directly addressed this issue, other courts have consistently rejected the application of strict liability to pharmacists. In *Johnson v. Richardson-Merrell, Inc.*, slip op., No. B-83-3814 (D.Md. June 1, 1984), a Bendictin case, the court, ruling from the bench, held that the pharmacy which filled the prescription for Bendectin was not strictly liable to the plaintiffs. The court found Comment K to the Restatement (Second) of Torts, § 402A to be persuasive. The *Johnson* court also relied upon two earlier cases the first of which was *McCleod v. W.S. Merrell Co., Div. of Richardson-Merrell*, 174 So.2d 736 (Fla.1965) in which the court held that the concept of strict liability without fault should not be applied to the prescription druggist. In *Batiste v. American Home Products Corp.*, 32 N.C.App. 1, 231 S.E.2d 269 (1977), the court held that the lower court properly dismissed plaintiff's claim against the pharmacist based on strict liability. Similarly, in *Bichler v. Willing*, 58 A.D.2d 331, 397 N.Y.S.2d 57, 59 (1977), relying on Comment K of the Restatement (Second) of Torts § 402A, the court rejected the argument that retail pharmacists should be under an obligation to independently test the drug's chemical structure for side effects or other possible risks and held that retail pharmacists are not to be held strictly liable for a failure to warn plaintiff of the potential hazards associated with the ingestion of DES. Finally, in *Jones v. Irvin*, 602 F.Supp. 399, 400 (S.D.Ill.1985), the court

noted that a pharmacist is not strictly liable under a products liability theory because he is not a retailer. Following the lead of these courts, I conclude that defendant Queen Pharmacy is entitled to judgment as a matter of law as to plaintiffs' strict liability claim.

Plaintiffs' second claim against defendant is grounded in negligence. Plaintiffs have not alleged that defendant was negligent in the filling of the prescription, i.e. that the pharmacist substituted another compound or a generic drug for that prescribed or that the pharmacist failed to include a warning that the physician had directed should be used. Rather, plaintiffs allege that defendant had a duty to warn plaintiff Rosa Ramirez of the potential hazards associated with the ingestion of Bendectin and that, in failing to give such warnings, was negligent. In support of their contention that pharmacists have a duty to warn patients of the potential hazards associated with the drugs, plaintiffs rely on the affidavit of Stanley Charles Glauser, Chief of the Division of Clinical Pharmacology at the graduate Hospital and excerpts from the *Standards of Practice for the Profession of Pharmacy, American Pharmacy,* volume 19, no. 3 (March, 1979). Both Dr. Glauser and the *Standards of Practice* suggest that a pharmacist has an obligation to fully advise and inform his clients of the potential adverse effects.

■ To impose a duty to warn on the pharmacist, however, would be to place the pharmacist between the physician who, having prescribed the drug presumably knows the patient's present condition as well as his or her complete medical history, and the patient. Such interference in the patient-physician relationship can only do more harm than good. As the court in *Batiste v. American Home Products Corp.,* 32 N.C.App. 1, 231 S.E.2d 269, 274 (1977) emphasized, when holding that a pharmacy could not be held liable in negligence for its failure to warn the plaintiff of the potential side effects associated with an oral contraceptive drug, defendant is not a physician and is not qualified or licensed to advise plaintiff with respect to the best medication for her use. *See also Ingram v. Hook's Drugs, Inc.,* Ind.App., 476 N.E.2d 881 (1985).

Plaintiffs contend that because over-the-counter products containing antihistamines similar to those used in Bendectin are required by federal regulation to carry a warning regarding use of the product during pregnancy, defendant pharmacy was under an obligation to provide such a warning to plaintiff at the time it filled the prescription. As previously noted, however, the duty of the manufacturer in the case of prescription drugs runs to the physician and not the patient under Pennsylvania law. To impose a greater duty on the pharmacist would be anomalous and would create an unduly high burden on the pharmacists. The point that must be emphasized is that the drug sold by defendant Queen Pharmacy was a prescription drug. The weighing of benefits of medication against potential dangers that are associated with it, which is the basis of the prescription drug system, requires an individualized medical judgment which only the physician can provide.

■ Adopting the standard set forth in *McLeod v. W.S. Merrell Co., Div. of Richardson-Merrell,* 174 So.2d 736, 739 (Fla. 1965), I conclude that a druggist has the duty to compound the drug prescribed, to use due and proper care in filling the prescription, to use proper methods in the compounding process, and to ensure that the drug is not adulterated with a foreign substance. Plaintiffs have not alleged a breach of any of these duties, and defendant QUEEN PHARMACY is therefore entitled to judgment as a matter of law as to the negligence claim.