## STEBBINS v CONCORD WRIGLEY DRUGS, INC

Docket No. 88734. Submitted March 19, 1987, at Detroit. Decided November 2, 1987.

Bonnie E. Stebbins brought an action in the Oakland ,Circuit Court against Concord Wrigley Drugs, Inc. (the pharmacy), an unnamed pharmacist, J. Scott Allen, M.D., P.C., and J. Scott Allen, M.D. The facts indicate that plaintiff was injured when her automobile was struck by an automobile driven by Joseph Zagone. Dr. Allen had prescribed Tofranil for Zagone and Zagone had his prescription filled at the pharmacy. Plaintiff alleged that Dr. Allen and the pharmacy failed to warn Zagone of the side effects of Tofranil and failed to warn him not to drive after taking the drug. Plaintiff alleged that the drug caused psychological as well as physical impairments in Zagone's driving ability which proximately caused the collision. The trial court, Robert L. Templin, J., granted motions for summary disposition in favor of Dr. Allen, the pharmacy and the unnamed pharmacist. The plaintiff appealed from the orders of summary disposition.

The Court of Appeals *held:*

1. Dr. Allen's affidavit and Zagone's deposition indicate that there is a genuinely disputed issue of material fact on the question of whether Dr. Allen warned Zagone appropriately. Thus, the trial court incorrectly concluded that plaintiff failed to produce adequate evidence of Dr. Allen's failure to warn. Dr. Allen's alleged failure to warn, however, could not result in liability in the absence of evidence establishing that Zagone's

REFERENCES

Am Jur 2d, Drugs, Narcotics, and Poisons §§ 52 *et seq.;* 60.

Am Jur 2d, Summary Judgment §§ 20 *et seq.*

Consideration of, or failure to raise or consider, question on appeal from conviction or on post-conviction remedy, as precluding its consideration on subsequent motion to vacate sentence under 28 USC sec. 2255. 10 ALR Fed 724.

Liability of manufacturer or seller for injury or death allegedly caused by failure to warn regarding danger in use of vaccine or prescription drug. 94 ALR3d 748.

Liability of manufacturer or seller for injury caused by drug or medicine sold. 79 ALR2d 301.

ingestion of Tofranil proximately caused the accident. Plaintiff did not establish the existence of a material factual dispute on this point. Plaintiff failed to carry her burden of showing that Zagone's use of Tofranil in accordance with the prescription proximately caused the accident, regardless of whether or not Dr. Allen gave any warning. The trial court did not err in granting summary disposition in Dr. Allen's favor after finding no causal connection based on the evidence before it.

2. The pharmacy had no duty to warn Zagone of potential Tofranil side effects. In the absence of such a duty, the pharmacy cannot be held liable to plaintiff and plaintiff has failed to state a claim against the pharmacy upon which relief can be granted.

3. A pharmacist has no duty to warn the patient of possible side effects of a prescribed medication where the prescription is proper on its face and neither the physician nor the manufacturer of the medication has required that any warning be given to the patient by the pharmacist.

Affirmed.

1. MOTIONS AND ORDERS — SUMMARY DISPOSITION — ISSUES OF MATE-
   RIAL FACT.
   The test to determine whether summary disposition should be granted on the ground that no genuine issue of material fact exists is whether the record which might be developed, giving the benefit of reasonable doubt to the opposing party, would leave open an issue upon which reasonable minds might differ; to grant summary disposition, the court must be satisfied, after considering the pleadings, affidavits, depositions, and other available evidence, that it would be impossible for the claim to be supported at trial because of some deficiency which cannot be overcome (MCR 2.116[C][10]).

2. MOTIONS AND ORDERS — SUMMARY DISPOSITION — ISSUES OF MATE-
   RIAL FACT.
   The party opposing a motion for summary disposition based on an alleged lack of a genuine issue as to any material fact must come forward to establish the existence of a material factual dispute; if the nonmoving party fails to establish that a material fact is at issue, the motion is properly granted (MCR 2.116[C][10]).

3. APPEAL — PRESERVING QUESTION.
   Issues not raised before the trial court generally may not be raised on appeal.

4. Motions and Orders — Summary Disposition — Issues of Material Fact.

  The mere conjecture that the defendant might recant an earlier sworn statement establishing no genuine issue of material fact cannot meet an opposing party's burden to establish a genuine issue of material fact for purposes of a motion for summary disposition based on an alleged lack of a genuine issue as to any material fact (MCR 2.116[C][10]).

5. Motions and Orders — Summary Disposition — Issues of Material Fact — Discovery.

  The party opposing a motion for summary disposition based on an alleged lack of a genuine issue as to any material fact must at least assert that such a dispute exists and support the allegation with some independent evidence, even if hearsay, where the party opposing the motion cannot present competent evidence of a disputed fact because discovery is incomplete (MCR 2.116[C][10]).

6. Motions and Orders — Summary Disposition — Failure to State a Claim.

  A motion for summary disposition based on a failure to state a claim upon which relief can be granted tests the legal basis of the complaint, not whether it can be factually supported; the factual allegations of the complaint are taken as true, along with any inferences or conclusions which may be fairly drawn from them; unless the claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover, the motion should be denied (MCR 2.116[C][8]).

7. Druggists — Negligence.

  A pharmacist generally may be held liable for negligently dispensing a drug other than that prescribed; a pharmacist is generally not held liable for damages resulting from a correctly filled prescription.

8. Druggists — Duty to Warn.

  A pharmacist has no duty to warn the patient of possible side effects of a prescribed medication where the prescription is proper on its face and neither the prescribing physician nor the manufacturer of the medication has required that any warning be given to the patient by the pharmacist.

*Gromek, Bendure & Thomas* (by *Mark R. Bendure*), for plaintiff.

*Law Offices of Michael J. Brochert* (by *David S. Anderson*), for Concord Wrigley Drugs, Inc., and John Doe Pharmacist.

*Kitch, Saurbier, Drutchas, Wagner & Kenney, P.C.* (by *Susan Healy Zitterman* and *Thomas J. Foley*), for J. Scott Allen, M.D., P.C., and J. Scott Allen, M.D.

Before: SHEPHERD, P.J., and J. H. GILLIS and S. J. LATREILLE,* JJ.

SHEPHERD, P.J. Plaintiff appeals from grants of summary disposition in favor of defendant J. Scott Allen, M.D., and defendants Concord Wrigley Drugs, Inc. (pharmacy) and an unnamed pharmacist. We affirm.

I

Plaintiff was seriously injured when her automobile was struck by Joseph Zagone's automobile at approximately 8:50 a.m. on October 26, 1984. It appears that Zagone ran a red light. According to his deposition, Zagone had breakfast at a restaurant and was on his way home. He apparently remembers very little about the accident. Plaintiff sued Zagone and eventually settled with him.

Dr. Allen treated Zagone regularly for some psychiatric problems and prescribed Tofranil, an antidepressant. Zagone filled this prescription at defendant pharmacy. Plaintiff's amended complaint alleged that Dr. Allen failed to warn Zagone "of the side effects of the drug" and failed to warn him not to drive after using Tofranil. Similar allegations were made with regard to defendant pharmacy. Plaintiff alleged that the drug caused

---

* Circuit judge, sitting on the Court of Appeals by assignment.

"psychological as well as physical impairments" in Zagone's driving ability which proximately caused the collision.

Defendant pharmacy moved for summary disposition pursuant to MCR 2.116(C)(8), arguing that it had no duty to warn customers of the side effects or hazards of prescription drugs, and MCR 2.116(C)(10), arguing that Zagone's deposition testimony revealed no side effects from his use of Tofranil. The trial court granted summary disposition for defendant pharmacy on October 17, 1985. At the hearing, the court found that a pharmacist has no duty to warn customers of a drug's side effects, that duty remaining with the physician. The court also determined that any effect the Tofranil might have had on Zagone was pure speculation.

Dr. Allen moved on November 7, 1985, to compel plaintiff to reveal the identity of her expert witnesses with regard to Tofranil. The court ordered plaintiff on October 9, 1985, to disclose the names within ninety days and permitted Dr. Allen to depose the experts prior to trial. It appears that plaintiff failed to comply with this order. Dr. Allen moved for summary disposition pursuant to MCR 2.116(C)(10) on February 5, 1986. Dr. Allen argued that he warned Zagone of possible Tofranil side effects, including the increased hazard in operating a motor vehicle. Dr. Allen also argued that the dosage he prescribed, taken at night, would not have caused Zagone's alleged drowsiness. The motion was supported by Dr. Allen's affidavit, as well as an affidavit by Dr. Joseph Miceli, a pharmacologist.

At a hearing on March 14, 1986, plaintiff's counsel indicated that a Dr. Spitz would testify as plaintiff's expert, but apparently no deposition had yet been taken. The court reviewed Dr. Allen's

evidence and concluded that plaintiff had not produced sufficient evidence to show that Dr. Allen failed to warn Zagone of Tofranil's potential side effects and that plaintiff had failed to show a causal connection between Zagone's taking of Tofranil and the accident. The court granted summary disposition for Dr. Allen, finding no genuine disputed issue of material fact.

## II

We first consider the grant of summary disposition in favor of Dr. Allen. A summary disposition motion under MCR 2.116(C)(10) should not be granted if a genuine issue exists as to any material fact. The test is whether the record which might be developed, giving the benefit of reasonable doubt to the opposing party, would leave open an issue upon which reasonable minds might differ. To grant summary disposition, the court must be satisfied that it would be impossible for the claim to be supported at trial because of some deficiency which cannot be overcome. *Tidwell v Dasher,* 152 Mich App 379, 383; 393 NW2d 644 (1986). The court must consider the pleadings, affidavits, depositions, and other available evidence. *Hagerl v Auto Club Group Ins Co,* 157 Mich App 684, 687; 403 NW2d 197 (1987). The party opposing the motion must come forward to establish the existence of a material factual dispute. If the nonmoving party fails to establish that a material fact is at issue, the motion is properly granted. *Stenke v Masland Development Co,* 152 Mich App 562, 574; 394 NW2d 418 (1986).

It is undisputed that Zagone's prescription required him to take one seventy-five milligram capsule of Tofranil at bedtime. Zagone's interrogatory answers indicated that he took Tofranil at

bedtime the night before the accident. He also indicated that he felt sleepy at the time of the accident.

During Zagone's deposition, he indicated that he had been taking Tofranil "for a period of time" before the accident. He stated initially that he did not remember "one way or the other" whether he took Tofranil the day of the accident. When plaintiff's counsel mentioned the prescription, Zagone indicated that he thought it was "two in the morning and two at night." After reading the label, however, Zagone apparently realized he was referring to the medication he was currently taking. Zagone also indicated that he might also have taken some Prolixin the night before the accident so he "could get some sleep." Dr. Allen had prescribed Prolixin earlier, but Zagone "just took them" the evening before the accident, having "some left over."

At Zagone's deposition, he also indicated that he had not had much sleep and might have "felt a little tired" the morning of the accident. He stated that he did not remember "any effects at all" from the Tofranil. Later, Zagone said he didn't "think it caused any problems" but also said he didn't remember if it had any effect on him on the accident date. When asked if Dr. Allen had told him that he should not do anything or should limit his activities in any way after taking Tofranil, Zagone stated that Dr. Allen "didn't say anything," nor did anyone from defendant pharmacy. He did not remember Dr. Allen's telling him not to drive after taking Tofranil.

Dr. Allen stated in his affidavit that he advised Zagone "of the possible side effects of drowsiness while taking Tofranil and of the risk of operating machinery including an automobile after having taken the medication in accordance with the man-

ufacturer's statement in the Physicians' Desk Reference." Dr. Allen stated that Zagone never exhibited or complained of drowsiness or other side effects, even when Dr. Allen had prescribed twice the dosage that Zagone was taking at the time of the accident. Dr. Allen specifically questioned Zagone about side effects and Zagone assured him there were none. Dr. Allen's affidavit further indicated that Zagone was taking the weakest available dose of Tofranil which, taken as prescribed, would not have impaired his ability to drive the next morning. Dr. Miceli's affidavit offered his expert opinion that Tofranil, taken as prescribed or even at twice the prescribed dosage, would not have affected Zagone's ability to drive at the time of the accident. Both Dr. Allen's motion and plaintiff's reply included a page from the Physicians' Desk Reference (PDR) stating that Tofranil "may impair the mental and/or physical abilities required for the performance of potentially hazardous tasks, such as operating an automobile or machinery," and thus the patient "should be cautioned accordingly."

We assume that, because of Dr. Allen's physician-patient relationship with Zagone, he could be liable to plaintiff as a third party if he negligently treated Zagone. See *Duvall v Goldin,* 139 Mich App 342, 351-352; 362 NW2d 275 (1984). We do not believe, however, contrary to plaintiff's arguments, that Dr. Allen could be liable in a situation where Zagone failed to follow the prescription, either in the amount of Tofranil taken or when it was taken. Some of Zagone's deposition testimony was confusing on this point. To analyze this summary disposition motion, we will assume that Zagone followed the prescription. This proposition is supported by a view of the evidence in a light most favorable to plaintiff.

Assuming, then, that Zagone followed the prescription, plaintiff's theory is that Dr. Allen failed to warn Zagone of potential side effects which would impair his ability to drive. Both plaintiff and Dr. Allen submitted information from the PDR which reveals the existence of potential Tofranil side effects and advises the physician to warn the patient appropriately. We regard this as essentially a stipulation to use this information, which establishes a duty on the part of Dr. Allen to have given Zagone an appropriate warning. The existence of this duty is further supported by Dr. Allen's statement that he gave an appropriate warning in accordance with the PDR. We believe Dr. Allen's affidavit and Zagone's deposition lead to a genuinely disputed issue of material fact on the question of whether Dr. Allen warned Zagone appropriately. Thus, we disagree with the trial court's conclusion that plaintiff failed to produce adequate evidence of Dr. Allen's failure to warn.

Dr. Allen's alleged failure to warn, however, could not result in liability in the absence of evidence establishing that Zagone's ingestion of Tofranil proximately caused the accident. The affidavits of Drs. Allen and Miceli indicate that, while Tofranil has potential side effects, Zagone would not and did not, in fact, experience them at the prescribed dosage. We do not believe plaintiff established the existence of a material factual dispute on this point. Plaintiff's answer to Dr. Allen's motion was supported by the information from the PDR. The PDR indicates the existence of *potential* side effects. The PDR does not refer to side effects occurring the following morning after a patient takes the medication at bedtime according to the terms of a prescription. We cannot conclude from the record before us that these potential side effects will occur in all patients at all dosage

regimens. Nor can we conclude that a particular warning is appropriate for all patients. Plaintiff failed to carry her burden of showing that Zagone's use of Tofranil in accordance with the prescription proximately caused the accident, regardless of whether or not Dr. Allen gave any warning. The trial court did not err in granting summary disposition after finding no causal connection based on the evidence before it.

Plaintiff argues that summary disposition in Dr. Allen's favor was premature because it was granted before plaintiff completed discovery. Numerous problems are presented by this issue. It appears that plaintiff has never raised this issue before, however, and thus is precluded from raising it on appeal.

If we were to consider this issue, it appears that plaintiff filed her initial complaint against Zagone on November 30, 1984. He answered on December 18, 1984. Under GCR 1963, 301.7, discovery would have ended with the pretrial conference. The new court rules became effective March 1, 1985. In general, the new court rules apply to all further proceedings and actions pending on that day unless application of the new rules would work injustice. MCR 1.102. Under MCR 2.301(A), discovery must be completed one year "after an answer has been filed" unless the court sets another date. Plaintiff filed the amended complaint against Dr. Allen and the pharmacy on May 1, 1985. Dr. Allen answered on May 23, 1985. Assuming that MCR 2.301(A) applies, it is unclear whether the one-year period ran from Zagone's or Dr. Allen's answer. One commentator has concluded that the one-year period commences on the filing of the first answer by any defendant in the action. 2 Martin, Dean & Webster, Michigan Court Rules Practice (3d ed), p 147. Under this view, the period for discovery

would have ended December 18, 1985, one year after Zagone's answer, while summary disposition for Dr. Allen was entered on April 3, 1986.

Moreover, it is unclear from plaintiff's brief what discovery she sought. Dr. Spitz was plaintiff's expert and under plaintiff's control. We fail to see the need for plaintiff to obtain discovery of her own expert. What plaintiff needed to do was obtain an affidavit or other evidence from Dr. Spitz establishing that a material factual dispute existed with regard to Tofranil's effect on Zagone. Plaintiff failed to do so. At the hearing on March 14, 1986, plaintiff's counsel indicated that Dr. Spitz "was going to testify as an expert on the case," without indicating in any fashion the substance of Dr. Spitz's testimony or opinion.

Plaintiff also notes that Dr. Allen's deposition was not taken. This Court held in *Szidik v Podsiadlo,* 109 Mich App 446, 450-451; 311 NW2d 386 (1981), however, that the mere conjecture that the defendant might recant an earlier sworn statement establishing no genuine issue of material fact could not meet an opposing party's burden to establish a genuine issue of material fact. Plaintiff also refers to the possibility of obtaining discovery from "witnesses to the collision, ambulance attendants, etc.," but does not describe the expected substance of this discovery. Plaintiff has submitted an ex parte affidavit with her brief on appeal asserting that she saw an ambulance attendant remove a container of Tofranil from Zagone's pocket. This information was not presented to the trial court, however. As this Court noted in *Pauley v Hall,* 124 Mich App 255, 263; 335 NW2d 197 (1983), if the party opposing a summary judgment motion cannot present competent evidence of a disputed fact because discovery is incomplete, the party must at least assert that such a dispute

exists and support the allegation by some independent evidence, even if hearsay. Even if we were to consider this evidence, the result would be the same. The evidence does not establish when Zagone took the medication and how it affected his ability to drive. If he took it at night, there is no evidence of its effect on him in the morning. If he took it in the morning, he violated the terms of the prescription. In either event, the physician is not responsible.

Accordingly, we find no error in the trial court's grant of summary disposition in favor of Dr. Allen.

### III

The above analysis regarding causation also supports summary disposition for defendant pharmacy. We believe an even more fundamental difficulty exists in plaintiff's action against defendant pharmacy, however, in that defendant pharmacy had no duty to warn Zagone of potential Tofranil side effects. In the absence of such of a duty, defendant pharmacy cannot be liable to plaintiff and plaintiff has failed to state a claim upon which relief can be granted.

A motion for summary disposition under MCR 2.116(C)(8) tests the legal basis of the complaint, not whether it can be factually supported. The factual allegations of the complaint are taken as true, along with any inferences or conclusions which may be fairly drawn from them. Unless the claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover, the motion should be denied. *Sponkowski v Ingham Co Road Comm,* 152 Mich App 123, 126-127; 393 NW2d 579 (1986).

The general rule in Michigan is that a pharmacist is held to a very high standard of care in

filling prescriptions and may be held liable for negligently dispensing a drug other than that prescribed. *Troppi v Scarf,* 31 Mich App 240, 245; 187 NW2d 511 (1971). A pharmacist is generally not held liable for damages resulting from a correctly filled prescription. *Lemire v Garrard Drugs,* 95 Mich App 520, 526; 291 NW2d 103 (1980).

The Supreme Court stated in *In re Certified Questions,* 419 Mich 686, 691-692; 358 NW2d 873 (1984), that Michigan courts had announced no rule concerning the duty of a pharmaceutical manufacturer to disclose the risks and potential side effects of drugs directly to the patient. The Court noted that the manufacturer's duty to warn patients directly "can be determined only in the broader context of deciding whether and to what extent patients should be warned and whether other persons, such as physicians or pharmacists, should provide warnings."

We have located no Michigan cases squarely addressing a pharmacist's duty to warn patients directly. Other jurisdictions, however, have found no duty to warn. The court noted in *Pysz v Henry's Drug Store,* 457 So 2d 561, 562 (Fla App, 1984), that, while a pharmacist may have a greater knowledge of drug propensities than a physician, "it is the physician who has the duty to know the drug that he is prescribing and to properly monitor the patient." In *Jones v Irvin,* 602 F Supp 399, 402 (SD Ill, 1985), the federal court elaborated on the physician's duty and also noted that the patient has a duty to notify the physician of other drugs the patient is taking and that the manufacturer has a duty to notify physicians of adverse effects and precautions. The court concluded that requiring a pharmacist to warn patients "would only serve to compel the pharmacist to second guess every prescription a doctor orders

in an attempt to escape liability." The Illinois Appellate Court subsequently adopted *Irvin* in *Eldridge v Eli Lilly & Co,* 138 Ill App 3d 124; 485 NE2d 551 (1985). See also *Kinney v Hutchinson,* 449 So 2d 696, 698 (La App, 1984).

We find the cases cited by plaintiff distinguishable. In *Hand v Krakowski,* 89 AD2d 650; 453 NYS2d 121 (1982), the pharmacy was found liable where its records indicated that plaintiff was an alcoholic, but the pharmacist still dispensed a medication strictly contraindicated for such a condition and failed to warn the plaintiff of the dangers. No similar situation exists in the instant case. Other New York courts have found no duty on the part of a pharmacist to warn patients of the potential side effects of prescribed medications. See *Ullman v Grant,* 114 Misc 2d 220; 450 NYS2d 955 (1982).

The case of *Krueger v Knutson,* 261 Minn 144; 111 NW2d 526 (1961), involved a sale of chemicals used by young boys to manufacture model rocket fuel, rather than the filling of prescriptions as in the instant case. In *Fuhs v Barber,* 140 Kan 373; 36 P2d 962 (1934), the pharmacist sold the plaintiff his own homemade remedy in addition to the prescribed compound, and the combination of the two compounds blackened the plaintiff's skin. The need for a warning in such a case is clear, but the instant plaintiff has alleged no such facts.

Plaintiff also cites *Riff v Morgan Pharmacy,* 353 Pa Super 21; 508 A2d 1247 (1986), in which the court held that the pharmacy had a duty to warn the patient and the prescribing physician "of the obvious inadequacies appearing on the face of the prescription which created a substantial risk of serious harm to the plaintiff." It appears that the prescription in *Riff* substantially exceeded the accepted maximum dose and that the pharmacy may

have refilled the prescription without authorization. Again, no similar facts are alleged in this case.

We conclude that Michigan should adopt the rule followed in *Pysz* and *Irvin*. We hold that a pharmacist has no duty to warn the patient of possible side effects of a prescribed medication where the prescription is proper on its face and neither the physician nor the manufacturer has required that any warning be given to the patient by the pharmacist. Under the alleged facts of this case, plaintiff has failed to state a claim against defendant pharmacy upon which relief can be granted. We need not consider a pharmacist's liability in situations such as where the pharmacist knows of a particular patient's unique problems or where a pharmacist fills two incompatible prescriptions.

Affirmed.