675 So.2d 1036 (1996)
Jeanette H. JOHNSON, Appellant,
v.
WALGREEN CO., Appellee.
No. 95-2807.
District Court of Appeal of Florida, First District.
July 3, 1996.
*1037 Jack C. Harris of Greene, Harris & Ellis, Jacksonville, for appellant.
Jeptha F. Barbour and Stephen B. Gallagher of Marks, Gray, Conroy & Gibbs, P.A., Jacksonville, for appellee.
WOLF, Judge.
Johnson's lawsuit against Walgreen was dismissed with prejudice by the trial court on the grounds that her complaint failed to state a breach of a valid legal duty. She challenges the trial court's findings as to the scope of a pharmacist's duties under Florida law. The question presented is whether Walgreen fulfilled its duties when it accurately filled her late husband's lawful prescriptions, but failed to warn him or his doctors of the potential adverse drug interactions such a combination of prescriptions might cause. We determine that no such duty to warn exists in Florida, and affirm the trial court's ruling.
For two years, appellant's late husband, Charles Johnson, was a regular customer at the Atlantic Beach Walgreen location. Mr. Johnson's health problems were numerous,[1] and he was seeing a number of doctors for treatment, each of whom prescribed different medications. The prescriptions were lawful and were filled accurately; however, in combination, they had potentially lethal effects. The pharmacist did not advise Mr. Johnson or his doctors of this fact. Additionally, the pharmacist recommended that Mr. Johnson take Benadryl, an over-the-counter allergy medication that was allegedly inappropriate for someone taking the drugs that Mr. Johnson was prescribed. In October of 1991, the prescription drugs interacted fatally, causing Mr. Johnson's death from multiple drug toxicity.
Mrs. Johnson filed her third-amended complaint on November 15, 1994, alleging that the pharmacy had breached its duty of care by failing to check the various prescriptions for interactions, failing to warn or counsel Mr. Johnson, failing to consult Mr. Johnson's prescribing physicians, and giving inappropriate and inaccurate advice about the drugs prescribed. She also alleged that the pharmacy had violated its duty of care by recommending inappropriate over-the-counter medication (Benadryl) for her husband, although she did not allege that the Benadryl had caused or had been instrumental in his death. In response, appellee argued that no such duty to warn exists on the part of pharmacists. The trial court agreed and granted Walgreen's motion to dismiss with prejudice on the grounds that a Florida pharmacist's sole duty is to accurately and properly fill all lawful prescriptions presented.
Both Walgreen and the trial court relied upon McLeod v. W.S. Merrell Co., 174 So.2d 736 (Fla.1965), and Pysz v. Henry's Drug Store, 457 So.2d 561 (Fla. 4th DCA 1984). In McLeod, the pharmacist had correctly filled a valid prescription, but had not warned the plaintiff of adverse side effects. Id. at 738. In rejecting the plaintiff's breach of warranty suit, the Florida Supreme Court held that a druggist who sells a prescription warrants only that the prescription is accurate, has been filled with due and proper care, has not been infected with some adulterating foreign substance, and has been compounded using the proper method. Id. at 739.
In Pysz, the plaintiff had become addicted to Quaaludes and alleged that the pharmacist who had been filling the prescriptions for nine years should have warned him of the *1038 drug's addictive potential. Id. at 561. Alternatively, he alleged that the pharmacist knew he was an addict and should have so informed his doctor. Id. The court affirmed the trial court's dismissal of his suit, holding that "it is the physician who has the duty to know the drug he is prescribing and to properly monitor the patient." Id. at 562. The fourth district went on to note, however, that "we limit our affirmance to the facts of this case since we recognize that a factual situation could exist which would support an action for negligence against a druggist who has lawfully filled a prescription issued by a licensed physician." Id. The court did not describe what those circumstances might be. We are unable to distinguish the facts in McLeod or Pysz from the instant case.
The appellant argued that a 1986 amendment to the definition of "dispense" in the Florida Pharmacy Act, codified at section 465.003(5), Florida Statutes (Supp.1986),[2] created a duty and private cause of action and that McLeod is no longer applicable. The appellant argued that the prior definition of "dispense" dealt only with the transfer of possession of medicinal drugs by pharmacists to consumers or their agents, but that the 1986 statutory amendment deliberately added language to the definition which created a duty on the part of pharmacists. The 1986 amendment added the following language:
As an element of dispensing, the pharmacist shall, prior to the actual physical transfer, interpret and assess the prescription order for potential adverse reactions, interactions, and dosage regimen he deems appropriate in the exercise of his professional judgment, and he shall certify that the medicinal drug called for by the prescription is ready for transfer. The pharmacist shall also provide counseling on proper drug usage, either orally or in writing, if in the exercise of his professional judgment counseling is necessary.
Id. The interpretation of this language is apparently of first impression in this state; therefore, we must determine whether section 465.003(5) in the pharmaceutical regulatory statute creates a cause of action.
In Murthy v. N. Sinha Corp., 644 So.2d 983 (Fla.1994), the supreme court found that while chapter 489, relating to contracting, provides administrative remedies against a qualifying agent, it does not expressly provide for a civil cause of action. Id. at 985. There, the supreme court concluded,
Chapter 489 establishes licensing procedures and regulatory duties for the construction industry and created the Construction Industry Licensing Board to enforce the performance of these procedures and duties. There is no evidence in the language of the statute or the statutory structure that a private cause of action against a qualifying agent was contemplated by the legislature in enacting this statute.
Id. at 986. Accordingly, the supreme court declined to infer any civil liability because there was no evidence in the language or the legislative history of chapter 489 of a legislative intent to create a private remedy against a qualifying agent. Id. Likewise, the legislative history in the instant case is devoid of any indication that the Legislature intended to create a private cause of action under these circumstances, and the language of section 465.003(5) was adopted within the regulatory scheme for pharmacists. We find the instant case indistinguishable from Murthy. While we recognize that there are policy arguments for imposing liability under these circumstances, such policy arguments are best made in the legislative context.[3] The decision of the trial court is affirmed.
BOOTH and VAN NORTWICK, JJ., concur.
NOTES
[1] Mr. Johnson's health problems included, among other things, high blood pressure, depression and sleeplessness.
[2] Ch. 86-256, § 2, Laws of Fla.
[3] We note that policy arguments could include the following comments. Prescription records are often maintained on computers at a single pharmacy. Therefore, while a number of doctors may be involved in the care and treatment of an individual, making the potential for physician error greater, the pharmacist may be in the best position to identify potential danger. In addition, recent trends in federal and state administrative law already require screening for potential drug interactions. See 42 U.S.C.S. § 1396r-8(g) (1993); Fla. Admin. Code R. 59G-4.250(20); Fla. Admin. Code R. 59X-27.800; Fla. Admin. Code R. 59X-27.810.